UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Sandra Lepley and <br> Casslyn Weekley <br>     Plaintiffs, <br><br> v. <br><br><br> Deputy Zach Owen, in his individual capacity <br><br>     Defendant. | Cause No.: 4:25-cv-00240 <br><br> Jury Trial Demanded |

Deputy Zach Owen
at:
Lincoln County Sheriff's Office
65 Business Park Dr
Troy, MO 63379

## COMPLAINT

Plaintiff states:

### Venue, Jurisdiction, and Identity of Defendants

1. All tortious acts and events described herein occurred in Lincoln County, Missouri.

2. Jurisdiction is conferred upon this United States District Court by 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983, and 1985(3).

3. At all times material to this action, the defendant was acting under color of State law.

4. The defendant was acting within the course and scope of his employment with the Lincoln County Sheriff's Department.

5. Plaintiff sues the Defendant in his individual capacity on all relevant counts.

## **FACTS**

6. On or about May 21, 2023, Plaintiff Lepley, a volunteer animal rescue worker working with and through an animal rescue shelter, and her companion, were driving in and around Truxton, Missouri on a blacktopped highway.

7. While driving on the roadway, suddenly two dogs, later identified as a miniature "Aussie" and a beagle ran onto the roadway directly into the path of their vehicle.

8. The driver, Lepley's companion, was barely able to avoid striking the dogs.

9. They alighted from the truck and coaxed the dogs to come to them where they could examine the animals.

10. The dogs had no collar or other means of ready identification.

11. Plaintiff Lepley and her companion got the dogs into the truck, and then drove around the area, stopping at the closest houses to inquire if anyone knew anything about the animals.

12. Being unable to locate anyone who recognized the animals or knew anything about their being missing from their owner, Plaintiff Lepley called a volunteer animal rescue worker, who she knew had a scanner for microchips, to come to the scene.

13. The worker met Plaintiff Lepley and her companion in Truxton.

14. The worker located a chip on the Aussie.  The worker called in the chip number to "Home Again," whose employee took the information from the chip and informed the worker the person to whom the chip was registered would be contacted and be given the information of whom and how to contact Plaintiff Lepley about the dogs.

15. Ms. Lepley, being told that the local shelters were full, took the dogs to her home and began to advertise through social media and local radio they had found the dogs.   Ms. Lepley also notified a local shelter that she had found the dogs.

16. Plaintiff Lepley kept and cared for the animals at her home until June 1, 2023.  On that day she "re-homed" the "Aussie" to her daughter, Plaintiff Casslyn Weekly to care for.  Plaintiff Lepley already had several stray dogs she was caring for.

17. On or about July 30, Plaintiff Lepley received a phone call from a person identifying himself as Andrew Holmes.

18. Mr. Holmes told Plaintiff Lepley that he owned the dogs.

19. After a few questions being answered by Mr. Holmes, Ms. Lepley was satisfied that Mr. Holmes probably was the owner of the Aussie and perhaps the beagle as well.

20. Plaintiff Lepley invited him to meet with her at her home to discuss payment of her out-of-pocket for her expenses for care for the dogs.

21. Mr. Holmes agreed to the meeting but failed to show up.

22. Plaintiff Lepley never heard from Mr. Holmes again.

23. On August 2, 2023, Ms. Lepley received a telephone call from a woman identifying herself as Kaitlyn Thornton.

24. Ms. Thornton claimed she owned the "Aussie" and asked Plaintiff Lepley to meet with her to deliver the dog.

25. Ms. Lepley explained to Ms. Thornton that she did not have possession of the Aussie, but her daughter, Casslyn Weekley, had the dog.

26. Ms. Lepley told Ms. Thornton that, in view of a contrary claim to ownership of the dog, she would require some proof that Ms. Thornton either owned the dog or had the right to possession of the dog.

27. Ms. Lepley also told Ms. Thornton that payment of the out-of-pocket expenses for the care of the Aussie would also need to be resolved.

28. Ms. Thornton did not ask as to the amount of the expenses she would be expected to reimburse, and Ms. Lepley did not state the amount.

29. Deputy Owen never spoke to Plaintiff Lepley.

30. On August 3, 2023, the day after Ms. Thornton called Ms. Lepley, Plaintiff Weekley received a telephone call from a man claiming to be a Lincoln County Deputy.

31. The man left a voice mail requesting a return call regarding the felony stealing of an animal.

32. Plaintiff Weekley returned the call.

33. Deputy Owens attempted to pressure Ms. Weekley to transfer possession of the Aussie to Ms. Thornton.

34. Ms. Weekley told Deputy Owen she believed she had a right to the Aussie and wished to speak with counsel before she decided what to do.

35. Deputy Owen has admitted that Ms. Weekley made a claim of right to possession of the Aussie.

36. Deputy Owen was aware that a genuine belief in a claim of right was a defense to a charge of stealing.

37. Deputy Owen told Ms. Weekley that he had proof that Ms. Thornton owned the Aussie, and she must surrender the dog to him immediately.

38. Deputy Owen had no proof that Thornton owned the dog except Thornton's statement to him that she owned the dog, which was false.

39. Deputy told Ms. Weekley, in the August 3, 2023 phone call, that he knew "these people," referring to Thornton, and that "they" were "good people."

40. Deputy Owen told Ms. Weekley that Ms. Thornton did not wish to prosecute for the theft of her dog but only wanted her dog returned.

41. Deputy Owen went to high school with Ms. Thornton.

42. Ms. Thornton did not wish to press criminal charges, but Deputy Owen told her the only way he could help was for her to press the charge of stealing the dog against the Plaintiffs.

43. Reluctantly, Ms. Thornton agreed to the prosecution of the Plaintiffs for stealing a dog from which she did not have a claim to of possession or ownership.

44. On August 8, 2023, with Ms. Thornton with him at the Lincoln County Sheriff's Office, Deputy Owen again telephoned Ms. Weekley.

45. He once again demanded the surrender of the animal to Ms. Thornton, or Ms. Weekley would be arrested and prosecuted for felony theft of animal.

46. Ms. Weekley advised Deputy Owen that the attorney she called had told her not to surrender the animal and that the dispute was a civil matter.

47. Deputy Owen told Ms. Weekley he would be seeking a warrant for her arrest on the felony charge of stealing an animal, and she would be going to jail.

48. Ms. Weekley, not intimidated, refused to accede to the order of a man who had never even shown to her his credentials as a police officer.

49. Deputy Owen never spoke with Ms. Weekley in person, nor through any other visual means.

50. On August 8, 2023, Deputy Owen prepared probable cause statements and asked for charges and a warrant for the arrest of the Plaintiffs on the felony offense of Stealing an Animal.

51. The Court issued summonses for the Plaintiffs rather than honoring the defendant's request that they be taken into custody and required to post bond.

52. The prosecutors of Ms. Weekley and Ms. Lepley throughout the prosecution of them offered to dismiss charges against them if Plaintiff Weekley would surrender the dog to Ms. Thornton.

53. Plaintiffs refused to accede to those demands and, instead, defended themselves against the false and illegally obtained charges

54. In his sworn probable cause statements requesting charges against plaintiffs, Deputy Owen stated that Ms. Thornton had provided him with proof of her ownership and right to possess the Aussie.

55. That claim was false.

56. In the probable cause statements, Deputy Owen, either intentionally or with a reckless disregard for the truth, failed to include material facts known to him that negated any potential probable cause.

57. Deputy Owen failed to include Ms. Weekley's claim of right to the animal and facts known to him that would lead to the legal conclusion that Ms. Weekley was not legally obligated to turn the dog over to Ms. Thornton.

58. Deputy Owen, in his probable cause statement, claimed that Ms. Thornton told him Ms. Lepley had refused to return the dog.

59. Upon information and belief, that claim is false.

60. Deputy Owen failed to include material facts that Ms. Lepley, in fact, had merely conditioned the dog's return upon proof of ownership and the resolution of veterinarian bills and other costs of keeping the dog.

61. In his probable cause statements, Deputy Owen failed to disclose his personal friendship with and resulting bias in favor of the alleged victim and her family.

62. After 16 months of prosecution, the State dismissed the charges against both Plaintiffs.

## Count I
## Violation of Plaintiff Lepley's Fourth Amendment Right to be Free from Unreasonable Search and Seizure, Pursuant to 42 U.S.C. § 1983, Seizure of Her Person

63. Plaintiffs reallege and incorporate herein by reference every fact contained in paragraphs 1 through 62.

64. Deputy Owen did not have probable cause to believe Ms. Lepley committed the felony of stealing the dog or any other crime.

65. Deputy Owen knew or recklessly disregarded that there was no probable cause to believe she committed any crime.

66. No reasonable officer in Depuy Owen's shoes would have believed probable cause existed to charge Ms. Lepley.

67. Deputy Owen wrongfully initiated a prosecution against Ms. Lepley by submitting a probable cause statement alleging that he had probable cause she committed a crime.

68. Deputy Owen's actions caused Ms. Lepley deprivation of her liberty, including being placed on bond and being required to appear regularly for court appearances.

69. As a direct and proximate result of Deputy Owen's actions, Ms. Lepley was damaged.

70. Ms. Lepley is a registered nurse and is employed full-time in that capacity.

71. Throughout the prosecution, Ms. Lepley suffered much mental anguish and emotional distress as a direct result of her criminal prosecution because of her perceived damage to her reputation and the on-going threat of losing not only her employment but her nursing license as well.

72. Ms. Lepley was forced to spend thousands of dollars on legal fees because of Deputy Owen's actions.

73. As a direct result of Deputy Owen's violation of her constitutional rights, Ms. Lepley has suffered emotional distress, mental anguish, ongoing anxiety, a fear of police officers in general, and a distrust in law enforcement and a distrust of the fairness of the criminal justice system.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and reasonable amount, for court costs, attorney's fees pursuant to 42 U.S.C. § 1988, and for all other such orders as are fair and reasonable.

## Count II
### Violation of Plaintiff Weekley's Fourth Amendment Right to be Free from Unreasonable Search and Seizure, Pursuant to 42 U.S.C. § 1983, Seizure of Her Person

74. Plaintiffs reallege and incorporate herein by reference every fact contained in paragraphs 1 through 73.

75. Deputy Owen did not have probable cause to believe Ms. Weekley committed the felony of stealing the dog or any other crime.

76. Deputy Owen knew or recklessly disregarded that there was no probable cause to believe she committed any crime.

77. No reasonable officer in Depuy Owen's shoes would have believed probable cause existed to charge Ms. Weekley.

78. Deputy Owen wrongfully initiated a prosecution against Ms. Weekley by submitting a probable cause statement alleging that he had probable cause she committed a crime.

79. Deputy Owen's actions caused Ms. Weekley deprivation of her liberty, including being placed on bond and being required to appear regularly for court appearances.

80. As a direct and proximate result of Deputy Owen's actions, Ms. Weekley was damaged.

81. Ms. Weekley is a registered nurse and is employed full-time in that capacity.

82. Throughout the prosecution, Ms. Weekley suffered much mental anguish and emotional distress as a direct result of her criminal prosecution because of their perceived damage to her reputation and the on-going threat of losing not only her employment but her nursing license as well.

83. Ms. Weekley was forced to spend thousands of dollars on legal fees because of Deputy Owen's actions.

84. As a direct result of Deputy Owen's violation of her constitutional rights, Ms. Weekley has suffered emotional distress, mental anguish, ongoing anxiety, a fear of police officers in general, and a distrust in law enforcement and a distrust of the fairness of the criminal justice system.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and reasonable amount, for court costs, attorney's fees pursuant to 42 U.S.C. § 1988, and for all other such orders as are fair and reasonable.

/s/ John D. James
John D. James, #61070(MO)
Charlie F. James, #26550(MO)
James Law Group, LLC.
Attorneys for Plaintiffs
14 Richmond Center Court
St. Peters, Missouri 63376
(636) 397-2411 Fax: (636) 397-2799
E-mail: CJLaw@CharlieJames.com
John@CharlieJames.com

### **CERTIFICATE OF SERVICE**

    I hereby certify that on February 27, 2025, I electronically filed the foregoing with the Clerk of the Court and that an electronic notice of filing and a copy of the foregoing will automatically be sent to all counsel of record.

                                      /s/ John D. James